**Erodney D. DAVIS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A05–1008–CR–502.

Court of Appeals of Indiana.

May 12, 2011.

Transfer Denied July 6, 2011.

P. Jeffrey Schlesinger, Crown Point, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

In this case, one of the issues with which we are presented is whether a trial court abused its discretion when it allowed a police detective to testify as a skilled witness that the denominations of money found on the defendant were indicative of drug dealing. While skilled witnesses need not satisfy the onerous requirements for expert witnesses under Indiana Evidence Rule 702, they must satisfy the two requirements under Indiana Evidence Rule 701, namely, that their testimony be rationally based on their perception and helpful to a clear understanding of their testimony or a fact in issue. The trial court concluded that the police detective's testimony satisfied both requirements. We cannot agree, but the error was harmless.

Appellant-defendant Erodney Davis appeals his conviction for Possession of Cocaine,[1] a class C felony. Specifically, Davis argues that the trial court erred by permitting a police detective to testify as a skilled witness and by excluding evidence of a witness's prior drug-related convictions. Additionally, Davis contends that the trial court erred by giving an additional instruction to the jury that it had inadvertently omitted from the final jury instructions. Finding no reversible error, we affirm.

## FACTS [2]

On September 4, 2009, Deanna Daniels met Davis at a gas station in Gary. Daniels drove her friend's SUV and followed Davis back to his house so that he could borrow the SUV, which he had done in the past.

After Davis briefly went into his house to leave his keys with his roommate, he returned to the SUV and assumed the driver's seat. While Davis was driving to a gas station, he tried to open a bag of cocaine to break off a piece for Daniels.

Unbeknownst to Davis and Daniels, the Gary Police Department's Narcotics and Vice Unit was looking for Davis because he had an active warrant for his arrest. Detective Gregory Tatum observed Davis get into the SUV at his home and notified other officers. Sergeant Jelks followed the SUV and observed Davis reaching over

---

1. Ind.Code § 35–48–4–6(b).

2. We heard oral argument on April 12, 2011, in the courtroom of the Indiana Supreme Court. We would like to thank counsel for their presentations and the Indiana University School of Law—Indianapolis students who attended the argument for their presence and respectful demeanor. Additionally, we want to express our appreciation to the administration, technology support, and staff of the Indiana Supreme Court for their assistance.

and leaning towards the passenger seat as if trying to hide something. Both Davis and Daniels looked back at the officers. Inside the SUV, Davis ordered Daniels to hide the cocaine. When Daniels did not understand, Davis repeated the order. As Davis and Daniels pulled into the gas station, Sergeant Jelks ordered them to stop.

Police officers converged on the SUV after Davis stopped at a gas pump and ordered Davis and Daniels to show their hands. Daniels complied immediately; however, Davis put his left hand in the air while continuing to keep his right hand obscured. Davis refused to exit the SUV when ordered and had to be physically removed. When Daniels was removed from the SUV, the bag of cocaine rolled from a crease in the middle console onto the passenger seat. Daniels told Detective John Suttles, "It's not mine. It's not mine." Tr. p. 141.

A search of Davis revealed $466, consisting of thirty-one $1 bills, thirteen $5 bills, five $10 bills, and sixteen $20 bills, and a cell phone. Detective Tatum and Sergeant Jelks both stated that, in their opinion, the number of bills and the denominations were indicative of drug dealing. *Id.* at 51, 53, 105–06, 118.

The bag that was collected from the SUV contained 3.49 grams of cocaine, which had a street value of $350. There were no latent prints recovered from the bag.

Back at the narcotics unit, Davis's cell phone kept ringing. When Detective Tatum answered it, Davis's roommate, Anthlena Horton said, "Nike,[3] Nike, Nike ... Don't worry. I'm getting everything out of the house now. Don't worry." *Id.* at 243. Detective Tatum understood her statements to mean that she was moving drugs out of their house.

On September 8, 2009, the State charged Davis with class C felony possession of cocaine, and on May 3, 2010, the State alleged that Davis was a habitual offender. Prior to trial, the State moved to exclude Daniels's drug-related convictions, which included a 2004 conviction for possession of cocaine and a 2009 conviction in Texas for possession with intent to deliver. Davis suggested that the evidence tended to show that it was normal for Daniels to possess cocaine. The trial court granted the State's motion.

Davis's jury trial commenced on June 21, 2010. At trial, the State sought to introduce evidence through Detective Tatum that the currency denominations in Davis's possession were indicative of drug dealing. Davis objected, arguing that the State had failed to establish an adequate foundation. The trial court concluded that Detective Tatum, a ten-year veteran on the force with four of those years with the narcotics unit, was a skilled witness and admitted the evidence. The same evidence was also admitted through Sergeant Jelks, a twenty-six year veteran with sixteen of those years with the narcotics unit, without objection.

When the trial court gave the jury the final instructions, it inadvertently omitted a definition of "possession." During deliberations, the jury asked for the legal definition of the term. Davis objected to the jury being given the instruction because it would not assist the jury and was "so complex." *Id.* at 293. The trial court noted that the instruction should have been given in the first place and that Davis's objection to it would have been overruled. When Davis complained that he would have "dealt with [possession] differently in my closing," the trial court gave the parties a second closing argument. *Id.*

3. Davis's nickname is Nike.

at 296, 312–14. The trial court reread all of the instructions, which included the instruction defining possession. The jury found Davis guilty as charged, and Davis pleaded guilty to being a habitual offender.

On July 16, 2010, the trial court held a sentencing hearing and sentenced Davis to six years for possession of cocaine, which was enhanced by four years on the habitual offender finding, for a total term of ten years. Davis now appeals.

## DISCUSSION AND DECISION

### I. Admissibility of Evidence

Davis makes two arguments regarding the admissibility of evidence. First, Davis argues that the trial court abused its discretion by allowing Detective Tatum to testify as a skilled witness. Additionally, Davis argues that the trial court erred by excluding evidence of Daniels's prior convictions for drug possession.

■ A trial court's ruling on the admissibility of evidence is generally reviewed for an abuse of discretion. *Tolliver v. State*, 922 N.E.2d 1272, 1278 (Ind.Ct.App. 2010), *trans. denied*. This Court will reverse only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

### A. Skilled Witness

■ Davis argues that the trial court abused its discretion by allowing Detective Tatum to testify as a skilled witness that the denominations of currency found on Davis were indicative of drug dealing. Our Supreme Court has stated that "[a]lthough a witness may not be qualified to offer expert testimony under Indiana Evidence Rule 702 [ (Rule 702) ], the witness may be qualified as a 'skilled witness' (sometimes referred to as 'skilled lay observer') under Indiana Evidence Rule 701 [ (Rule 701) ]." *Kubsch v. State*, 784 N.E.2d 905, 922 (Ind.2003) (internal citations omitted). More particularly, a "skilled witness is a person with 'a degree of knowledge short of that sufficient to be declared an expert under ... Rule 702, but somewhat beyond that possessed by ordinary jurors.'" *Id.* (quoting 13 Robert Lowell Miller, Jr., *Indiana Evidence* § 701.105, at 318 (2d ed.1995)). Nevertheless, pursuant to Rule 701, the skilled witness's opinion must be rationally based on the witness's perception and helpful to a clear understanding of the witness's testimony or a determination of a fact in issue. *Id.*

Both parties direct us to *Davis v. State*, 791 N.E.2d 266 (Ind.Ct.App.2003). In *Davis*, the defendant was on trial for possession of cocaine with intent to deliver, and a police sergeant was permitted to testify as a skilled witness regarding the amount of cocaine carried by a drug user as opposed to a drug dealer. *Id.* at 269. On appeal, this Court affirmed, stating that the sergeant's opinion was rationally based on his personal experience as an investigator. *Id.* Furthermore, the *Davis* Court reasoned that "[h]is testimony was helpful in determining the issue of intent to deliver because [it] established the distinct characteristics that differentiate between a drug user and a drug dealer." *Id.*

The facts and circumstances in this case are distinguishable from those in *Davis*. In this case, Detective Tatum testified that he processed $466 that Detective McClelland had collected from Davis's pocket, consisting of "thirty-one $1 bills, thirteen $5 bills, five $10, and sixteen $20 bills." Tr. p. 49–50. Detective Tatum testified that from his experience, this was indicative of drug dealing. *Id.* at 51. However, we find this conclusion too speculative, inasmuch as the money could have come from tips, a recent visit to the bank, or many other legal sources.

Moreover, Davis was on trial for and convicted of class C felony *possession* of cocaine rather than *dealing* in cocaine. Accordingly, Detective Tatum's testimony fails to satisfy the requirement under Rule 701 that skilled witness testimony be helpful to a determination of a fact in issue.

■ Nevertheless, we decline to reverse Davis's conviction on this basis because the error was harmless. "Error is harmless if 'the conviction is supported by substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction.'" *Tolliver*, 922 N.E.2d at 1278 (quoting *Cook v. State*, 734 N.E.2d 563, 569 (Ind.2000)). Here, Davis's possession of cocaine inside the SUV, his attempts to hide the cocaine when he noticed the police officers, and his refusal to exit the vehicle were sufficient to support his conviction, even in the absence of Detective Tatum's testimony about the denominations of the money. Consequently, this argument fails.

### B. Character Evidence

Davis argues that the trial court should have allowed him to present evidence regarding Daniels's prior convictions for possession of cocaine and possession with intent to deliver. More particularly, Davis contends that the issue before the jury was the "identity of the person in possession of the drugs found in the [SUV]." Appellant's Br. p. 9. Because of this, "[t]he fact that Daniels had multiple prior convictions for possession of drugs makes it more likely that she was the owner of the drugs found in the [SUV]." *Id.* at 9–10.

■ Indiana Evidence Rule 404(b) provides that evidence of crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action in conformity therewith." Nevertheless, it may be admissible to show "proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid. R. 404(b). The purpose of Rule 404(b) is to prevent the jury from assessing guilt on the basis of past propensities. *Reese v. State*, 939 N.E.2d 695, 700 (Ind.Ct.App.2011), *trans. denied.* Moreover, Rule 404(b) applies to persons other than defendants. *Garland v. State*, 788 N.E.2d 425, 430 (Ind.2003).

Here, from the record and oral argument, it appears that it was the State's intent to show that Davis was a cocaine dealer who had possession of the cocaine when Detective Tatum saw him get into the SUV at his home. Then, while driving with the narcotics unit following, a drug transaction occurred between Davis and Daniels. Accordingly, from the State's theory, it follows that Daniels's record as a user and possessor was indeed relevant.

■ Nevertheless, this Court will not reverse if the exclusion of evidence amounted to harmless error. *Edwards v. State*, 930 N.E.2d 48, 52 (Ind.Ct.App.2010). And, the exclusion of Daniels's prior drug possession convictions was harmless, inasmuch as it supports the State's theory. Consequently, Davis was not prejudiced by the exclusion of this evidence, and this argument fails.

### II. Jury Instruction

■ Davis argues that the trial court abused its discretion by giving an instruction defining "possession" after the jury had already started deliberating. Davis asserts that this constitutes reversible error, inasmuch as it focused "undue attention on the issue in the new instruction." Appellant's Br. p. 5.

■ Generally, once jury deliberations begin, the trial court should not give additional instructions. *Crowdus v. State*,

431 N.E.2d 796, 798 (Ind.1982). However, the trial court may modify its instructions when faced with an omitted instruction or an erroneous instruction, so long as it is fair to the parties. *Jenkins v. State,* 424 N.E.2d 1002, 1003 (Ind.1981).

In the instant case, the trial court inadvertently omitted an instruction defining "possession." When the jury requested the instruction, the trial court reread all the final instructions and even took the additional step of allowing a second closing argument to ensure that Davis would not suffer any prejudice. Indeed, Davis was not prejudiced by the additional instruction, and we affirm the decision of the trial.

The judgment of the trial court is affirmed.

KIRSCH, J., and FRIEDLANDER, J., concur.