**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**STEVEN E. RIPSTRA**
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jun 18 2012, 9:50 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

TINA R. LIKE SIMMONS,          )
                               )
    Appellant-Defendant,       )
                               )
        vs.                )    No. 63A05-1111-CR-615
                               )
STATE OF INDIANA,              )
                               )
    Appellee-Plaintiff.        )

APPEAL FROM THE PIKE CIRCUIT COURT
The Honorable Jeffrey L. Biesterveld, Judge
Cause No. 63C01-1001-FB-25

June 18, 2012

MEMORANDUM DECISION - NOT FOR PUBLICATION

**ROBB, Chief Judge**

## Case Summary and Issues

Tina R. Like Simmons was convicted after a jury trial of neglect of a dependent as a Class C felony, possession of methamphetamine as a Class D felony, and maintaining a common nuisance as a Class D felony. She appeals, raising five issues for our review, which we consolidated and restate as three: 1) whether the trial court abused its discretion by allowing the prosecutor's cross-examination of Michael Marvell; 2) whether the trial court abused its discretion in admitting Officer Tharp's testimony as a skilled witness; and 3) whether the evidence is sufficient to sustain Simmons's convictions. Concluding the trial court did not abuse its discretion by allowing the prosecutor's cross-examination of Marvell or by admitting Officer Tharp's testimony, and that sufficient evidence was presented to support Simmons's convictions, we affirm.

## Facts and Procedural History

After receiving a tip of drug activity, police went to the residence of Michael Marvell. Todd Marvell, Michael's son, Jessica Bullock, Lisa Bradley, and Simmons's eighteen-month-old-son, R.S., were present in the home. Michael Marvell and Simmons were not present. After searching the home, police found R.S. lying on a bed in Michael's room. Also in Michael's bedroom, in a closet covered only by a tacked-up blanket, were several mason jars containing methamphetamine and various paraphernalia, including aquarium tubing, funnels, a metal strainer, a roll of aluminum foil, pens modified to snort methamphetamine, multiple packs full of pseudoephedrine pills,[1] plastic baggies and digital scales, a pyrex cooking pan, a makeshift pipe, and "liquid

---

[1] Pseudoephedrine is the main ingredient in methamphetamine.

lightning" drain opener.[2]  Other contraband, including pills and a bottle of solvent, were in the bedroom outside of the closet.  Also in the bedroom, police found various children's toys, stuffed animals, a toddler chair, a female's handbag, a jean purse, and a female's pocketbook.[3]  The bedroom was no larger than ten-by-fourteen feet.  In the kitchen, police found a pitcher containing two layers of liquid, the top layer being a solvent, and a blender containing a white residue.

Simmons was charged with dealing in methamphetamine, a Class B felony; possession of two or more chemical reagents or precursors with the intent to manufacture controlled substances, maintaining a common nuisance, possession of methamphetamine, and neglect of a dependent, all Class D felonies; and possession of paraphernalia, a Class A misdemeanor.  Over Simmons's objection, the State later amended the neglect of a dependent charge to a Class C felony.  The State also dismissed the charges for possession of paraphernalia and possession of two or more chemical reagents or precursors with the intent to manufacture controlled substances.

At trial, the State called Officer Chad Tharp to testify as a skilled witness under Indiana Rule of Evidence 701.  First, the prosecutor asked Officer Tharp about his experience, and Officer Tharp stated he previously worked on several methamphetamine laboratory cases, received training on methamphetamine production while at the police academy, attended a national conference a week before trial to learn about methamphetamine production, participated in manufacturing methamphetamine as a

---

[2] Liquid lightning is a sulfuric acid and is used in the manufacture of methamphetamine.

[3] Although not discussed in detail in the parties' briefs, based on the record it appears police also found contraband in another single-wide trailer and shed on the property, but the trial court granted Simmons's motion to suppress the evidence found in those locations.  However, the trial court's order granting Simmons's motion to suppress the evidence from those two locations did not also suppress evidence found in Marvell's double-wide trailer located nearby.

training exercise using the "red phosphorous method," and observed several "Nazi" methamphetamine laboratories. The prosecutor then asked, "[b]ased . . . on your training and experience, what percentage of ephedrine or pseudoephedrine . . . can be successfully converted to methamphetamine using the Nazi method?" Tr. at 277. Simmons objected, contending Officer Tharp lacked sufficient personal knowledge regarding the Nazi method because he had never manufactured methamphetamine using the Nazi method. The prosecutor responded that such personal knowledge is not required when using a skilled witness. The trial court agreed and overruled Simmons's objection, allowing Officer Tharp to testify.

Officer Tharp then answered the State's prior question: "[u]sing the Nazi method, you could get, depending on . . . now on the perfect day, the wonderful, most perfect day that you've ever seen, that we've never seen, ninety percent (90%). Average. You can get seventy percent (70%) yield out of a manufacture." Tr. at 280 (ellipses in original). Shortly thereafter, after asking other questions about the manufacture of methamphetamine, the State repeated its question concerning the typical yield of methamphetamine by posing a hypothetical based on a box of ephedrine: "But in your experience the typical yield from a two point four (2.4) gram box of ephedrine is somewhere in the, in the neighborhood of, [sic] of seventy percent (70%) of two point four (2.4) grams, which is between a gram and a half and two grams?" Id. at 281. Officer Tharp replied, "What we, normally when we talk, when, if we get someone for manufacturing, we'll talk to them. Hey, what do you yield? You know, what, what percentages do you yield? We'll talk to them about how they do it. They can yield up to seventy percent (70%). Most of them." Id.

4

Todd Marvell's fiancée testified the residence was occupied by her, Todd, Michael Marvell, and Simmons and R.S. After the State rested, Simmons called Michael Marvell to testify. Michael had previously pleaded guilty to criminal charges arising from his production of methamphetamine. After asking preliminary questions, defense counsel asked, "[w]ere all the items found . . . in the burn pile and in the . . . residence where you were staying . . ., that were related to manufacturing or methamphetamine, were those your items?" Id. at 331. Michael replied, "[y]es," and defense counsel asked no further questions. Id. On cross-examination, over Simmons's repeatedly overruled objections, the State asked Michael the following questions: whether Simmons lived with him at his residence; whether Simmons had custody of her son, R.S.; whether Simmons used methamphetamine with Michael; whether he had ever seen Simmons use a "snort tube," pipes, and/or foil to use methamphetamine; whether R.S. slept in Marvell's bedroom in the residence; and whether and to what extent Simmons was involved in his methamphetamine manufacturing.

After a jury trial, Simmons was convicted of neglect of a dependent as a Class C felony, possession of methamphetamine as a Class D felony, and maintaining a common nuisance as a Class D felony. She was found not guilty of dealing in methamphetamine. The trial court sentenced Simmons to six years for neglect of a dependent and one year each for possession of methamphetamine and maintaining a common nuisance, all ordered to be served consecutively, for an aggregate sentence of eight years. Simmons now appeals.

## Discussion and Decision

### I. The State's Cross-Examination of Michael Marvell

Indiana Rule of Evidence 611(b) provides: "Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Our supreme court has previously stated:

> The trial court is vested with broad discretion in determining the scope and extent of cross-examination. . . . The scope of permissible cross-examination extends to all phases of the subject matter covered in direct examination and may include any matter which tends to elucidate, modify, explain, contradict, or rebut testimony given in chief by the witness.

Smith v. State, 765 N.E.2d 578, 588 (Ind. 2002) (citations and quotation omitted).

Simmons contends the State's cross-examination of Michael Marvell exceeded the scope of her direct examination, and therefore the trial court abused its discretion by permitting the State's questioning. As to whether she was prejudiced by the questions permitted on cross-examination, Simmons contends she was because there was very little incriminating evidence other than Michael's testimony on cross-examination. The State responds "[t]he prosecutor's questions were directly related to the issue of whether Marvell was the only person manufacturing methamphetamine at the residence and whether all of the items related to manufacturing methamphetamine were solely his, as he indicated on direct exam." Brief of Appellee at 6. Further, the State argues "[t]he questions asked by the prosecutor referenced matters that tended to elucidate, modify, explain, contradict or rebut the testimony given by Marvell on direct exam." Id.

We cannot conclude the trial court abused its broad discretion by permitting the State's questions on cross-examination. The questions asked by the State could reasonably be determined to be within the scope of Simmons's questions on direct examination. Simmons asked Marvell whether all of the contraband discovered in his

6

residence used in manufacturing methamphetamine belonged to him. He replied that it was, and on cross-examination, the State's line of questions, as a whole, was directed at the veracity of Marvell's response on direct. For example, if Simmons lived in the residence, used the paraphernalia and methamphetamine discovered in the residence, and was involved in the manufacturing of methamphetamine, then a fact finder could conclude Marvell's answer on direct was not wholly accurate. Further, as the State points out, Rule 611(b) grants a trial court discretion to allow additional questions on cross-examination as if the questioning party were asking on direct. Thus, the trial court did not abuse its broad discretion in permitting the State to cross-examine Marvell as it did.

## II. Officer Tharp's Testimony

> The decision to admit or exclude evidence will not be reversed absent a showing of manifest abuse of discretion resulting in the denial of a fair trial. An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the trial court. In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the appellant's favor.

State v. Hunter, 898 N.E.2d 455, 457-58 (Ind. Ct. App. 2008) (citations omitted).

Simmons argues Officer Tharp's testimony regarding the achievable percentage yield during regular methamphetamine manufacture and methamphetamine manufacture using the Nazi method should not have been permitted because he did not qualify as a skilled witness under Indiana Rule of Evidence 701 nor as an expert witness under Rule 702. The State responds Officer Tharp's testimony was admissible under either Rule 701 or 702.[4]

---

[4] Because we conclude Officer Tharp's testimony is admissible under Indiana Rule of Evidence 701, we need not determine whether his testimony would also be admissible under Rule 702.

Rule 701 provides, "[i]f the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." A skilled witness is a person with "a degree of knowledge short of that sufficient to be declared an expert under Rule 702, but somewhat beyond that possessed by the ordinary jurors." Mariscal v. State, 687 N.E.2d 378, 380 (Ind. Ct. App. 1997) (quotation omitted), trans. denied.

Simmons contends Officer Tharp did not qualify under Rule 701 because he lacked sufficient personal knowledge regarding the Nazi method of manufacturing methamphetamine. In support of her contention, she points to the facts that Officer Tharp had not manufactured methamphetamine himself using the Nazi method and that during his testimony he referred to what defendants tell police they normally yield when producing methamphetamine. However, under Rule 701, the issue is not whether a witness has sufficient personal knowledge about the subject matter to which he or she is testifying, it is whether an opinion or inference given by the witness is "rationally based on the perception of the witness" and helpful to the jury in understanding the witness's testimony. Ind. Evidence Rule 701. Here, Officer Tharp testified he received training on methamphetamine production, attended at least one conference to learn about methamphetamine production, participated in a manufacturing training exercise, worked on several methamphetamine laboratory cases, and observed several Nazi method methamphetamine laboratories. We cannot conclude the decision to admit Officer Tharp's testimony as a skilled witness was against the logic and effect of the

circumstances before the trial court. Based on the breadth of experience Officer Tharp had with methamphetamine manufacturing, including observing the Nazi production method, the trial court could reasonably conclude his testimony was rationally based on his prior perceptions of methamphetamine production. That he also relayed information gleaned from suspects about the details of their methamphetamine manufacturing does not negate this breadth of experience and personal observations which independently gave rise to at least part of his testimony.

Further, even if Officer Tharp's testimony was not rationally based on his perceptions, Simmons fails to establish how this admission of evidence denied her of a fair trial, and we will not reverse a trial court's admission of evidence absent a showing that such admission was a manifest abuse of discretion resulting in the denial of a fair trial. Hunter, 898 N.E.2d at 457-58. The only portion of her appellate brief that even approaches a showing that Simmons was denied a fair trial is the statement:

> It was error to allow [Officer Tharp's] testimony. It was not harmless, because no other evidence was presented as to the weight of the methamphetamine. Davis v. State, [948 N.E.2d 843, 848 (Ind. Ct. App. 2011)]. Even though the three convictions do not depend on weight, the conversion allows the jury to consider that methamphetamine existed beyond the mere traces found in some of the jars.

Brief of Appellant at 12. This is not an argument that Simmons was denied a fair trial by the purportedly inadmissible testimony of Officer Tharp, but an argument that the alleged error of the trial court in admitting Officer Tharp's testimony was not harmless. In any event, as Simmons concedes, none of her convictions depended upon the weight of methamphetamine discovered by police officers, and therefore, Officer Tharp's testimony, even if inadmissible, did not deny Simmons of a fair trial.

Simmons also argues Halferty v. State, 930 N.E.2d 1149 (Ind. Ct. App. 2010), trans. denied, applies. There, police officers found .40 grams of methamphetamine and 4.61 grams of ephedrine/pseudoephedrine in Halferty's apartment. To establish that Halferty was manufacturing the requisite three grams of methamphetamine to convict him of Class A felony dealing in methamphetamine, an officer testified that "in general," the yield achieved when producing methamphetamine from ephedrine/pseudoephedrine is "usually right around 70, 80 percent" and that one gram of ephedrine/pseudoephedrine produces "about" .70 or .80 grams of methamphetamine. Id. at 1151. However, the officer also testified the yield can fall to below fifty percent, depending on the ability of the manufacturer.

This court noted that the only evidence presented establishing that Halferty was manufacturing three grams or more of methamphetamine was the above officer's testimony, and we concluded the evidence presented was insufficient to convict Halferty of dealing in methamphetamine as a Class A felony because "[c]ooking the 4.61 grams of ephedrine/pseudoephedrine at a yield of fifty percent would create about 2.31 grams of methamphetamine – an amount that, even when added to the .40 grams of produced methamphetamine, would produce less than three grams." Id. at 1153-54. We did not, however, conclude the officer's testimony was inadmissible, and Halferty is therefore inapplicable.

### III. Sufficiency of the Evidence

Simmons contends insufficient evidence exists to support any of her three convictions. Our standard of reviewing the sufficiency of evidence is well-settled:

> Upon a challenge to the sufficiency of evidence to support a conviction, a reviewing court does not reweigh the evidence or judge the credibility of the witnesses, and respects the jury's exclusive province to weigh conflicting evidence. We have often emphasized that appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. Expressed another way, we have stated that appellate courts must affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.

McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005) (quotations and citations omitted).

## A. Neglect of a Dependent

To convict Simmons of neglect of a dependent, the State was required to establish beyond a reasonable doubt that Simmons knowingly or intentionally placed R.S. in a situation that endangered the child's life or health. Ind. Code § 35-46-1-4(a)(1). To establish the offense as a Class C felony, the State was required to show that the neglect occurred in a location where a person was also guilty of manufacturing methamphetamine or that the neglect is the result of the manufacture of methamphetamine. Ind. Code § 35-46-1-4(b)(1)(B). Simmons contends insufficient evidence was presented to establish R.S. was exposed to a dangerous situation or Simmons knowingly placed R.S. in danger.

This court and our supreme court have previously noted "the production of methamphetamine introduces a high risk of explosion and fire." Holder v. State, 847 N.E.2d 930, 939 (Ind. 2006). Anyone living in a home where methamphetamine is manufactured is exposed to the highly flammable and explosive atmosphere in the home. Id. Thus, Simmons placed R.S. in an environment that endangered the child's life or health. Further, Marvell testified he manufactured methamphetamine in the home, which

11

satisfies part (b) of the statute and raises the offense to a Class C felony if all other elements of the offense are established.

Simmons contends, however, that the State presented insufficient evidence to prove beyond a reasonable doubt she knowingly or intentionally placed R.S. in a situation that endangered the child's life or health. We disagree. The evidence reveals Marvell was manufacturing methamphetamine in the home, and the tools and ingredients he used to do so were found in various locations in the home. In the bedroom where Simmons and Marvell spent most of their time and slept, police found mason jars containing methamphetamine and various other paraphernalia in a closet with nothing more than a tacked-up blanket covering it. Also in the bedroom, police found a pill bottle and container of solution used to manufacture methamphetamine, and a female's handbag, purse, and pocketbook. In the kitchen, police discovered a solvent and a blender containing a white residue. Further, Marvell testified Simmons regularly used methamphetamine, including that which he manufactured. Marvell also had the following exchange with the prosecutor while testifying:

Q. And this bedroom is about how big?
A. Ten by ten or ten by twelve.
Q. Small. Correct?
A. Yeah. That stuff . . . wasn't always in there.
Q. It was on January 2nd, 2010, wasn't it?
A. Yes. It was on that day.
Q. What was there to keep [R.S.] from getting in those jars? Those Mason jars in the closet?
A. We was. [sic]
Q. You were. [sic]
A. Well we wasn't there that day. No.
Q. What precautions did Tina take to keep [R.S] from getting in those jars in the closet?
A. We had the door shut to that room when we left.

Q. Did you tell [the babysitter], we've got a lab in that closet and we don't want the child in there?

* * *

A. Yes. We told her to stay out of the room.

* * *

Q. What makes you think [the babysitter] was aware of it?

A. She knew.

Q. She'd been around when meth was being used, hadn't she?

A. Yes.

Q. She had used meth there, hadn't she?

A. Yes.

Q. And she knew what you were up to, didn't she?

A. I presume. Yes.

Q. And Tina knew what you were up to, didn't she?

A. Yes. I presume.

Tr. at 346-48.

Reviewing all the probative evidence and reasonable inferences drawn therefrom, a reasonable finder of fact could conclude Simmons knowingly or intentionally placed R.S. in an environment where methamphetamine was being manufactured, and thus, in an environment that endangered R.S.'s health or life.

### B. Possession of Methamphetamine

A person who knowingly or intentionally possesses methamphetamine commits possession of methamphetamine, a Class D felony. Ind. Code § 35-48-4-6.1.

> Constructive possession will support a possession conviction if the State shows that the defendant had both the capability and the intent to maintain dominion and control over the contraband. Where control is non-exclusive, intent to maintain dominion and control may be inferred from additional circumstances that indicate that the person knew of the presence of the contraband.

White v. State, 772 N.E.2d 408, 413 (Ind. 2002) (citation omitted). Additional circumstances indicating a person knew of the presence of contraband could include: "(1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a

13

drug manufacturing setting; (4) proximity of the defendant to the drugs; (5) drugs in plain view; and (6) location of the drugs in close proximity to items owned by the defendant." Goffinet v. State, 775 N.E.2d 1227, 1230 (Ind. Ct. App. 2002) (quoting Ladd v. State, 710 N.E.2d 188, 190 (Ind. Ct. App. 1999)), trans. denied.

Here, the evidence sufficiently establishes that Simmons knew of the contraband's presence, and therefore, it is sufficient to establish her capability and intent to maintain dominion and control of the contraband. The residence was used as a drug manufacturing setting. The bedroom where Simmons slept, spent the majority of her time while in the home, and kept some of her personal belongings is where police discovered most of the contraband. And, as discussed above, Marvell testified that, at the very least, he presumed Simmons knew about his manufacturing methamphetamine, and that she used the methamphetamine he produced. The evidence indicates Simmons knew of the presence of contraband on the premises. Therefore, the evidence was sufficient for a reasonable finder of fact to conclude Simmons constructively possessed the contraband.

C. Maintaining a Common Nuisance

To convict Simmons of Class D felony maintaining a common nuisance, the State was required to show beyond a reasonable doubt that she "knowingly or intentionally maintain[ed] a building . . . or other place that is used one (1) or more times: (1) by persons to unlawfully use controlled substances; or (2) for unlawfully: (A) manufacturing; [or] (B) keeping; . . . controlled substances . . . ." Ind. Code § 35-48-4-13(b). We have previously addressed how to define "maintain" for the purposes of this statute, and we have concluded, based on common definitions of the word, legal ownership is not required and the evidence necessary to establish constructive possession

14

is also sufficient to prove a defendant maintained a residence under Indiana Code section 35-48-4-13. Jones v. State, 807 N.E.2d 58, 66-67 (Ind. Ct. App. 2004), trans. denied.

Simmons contends there is insufficient evidence that she knowingly maintained a building where methamphetamine was being manufactured. As discussed above, we disagree with her argument that the evidence failed to sufficiently establish she knew about the manufacture of methamphetamine occurring in the home. Marvell testified Simmons knew or that he presumed she knew. She used the methamphetamine Marvell produced. She slept, spent most of her time, and kept some of her personal belongings in the small bedroom where most of the contraband was found. The home contained a methamphetamine manufacturing setting. Based on the totality of the circumstances, sufficient evidence was presented for a reasonable finder of fact to conclude Simmons knew methamphetamine was being manufactured in the home. Therefore, the evidence is sufficient to support her conviction for maintaining a common nuisance.

### Conclusion

The trial court did not abuse its discretion by allowing the prosecution's cross-examination of Michael Marvell or by admitting Officer Tharp's testimony as a skilled witness, and the evidence was sufficient to establish Simmons's convictions. We therefore affirm.

Affirmed.

BAILEY, J., and MATHIAS, J., concur.

15