Allen A. HALFERTY, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A03–0910–CR–475.

Court of Appeals of Indiana.

July 9, 2010.

**1150**

Marielena Duerring, South Bend, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Wade James Hornbacher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Allen A. Halferty ("Halferty") was convicted of dealing in methamphetamine[1] as a Class A felony and maintaining a common nuisance,[2] a Class D felony. On appeal, we address the following two issues, the second of which we raise *sua sponte.*

I.  Whether there was sufficient evidence that Halferty had control of the premises to support his conviction for maintaining a common nuisance; and

II.  Whether there was sufficient evidence of the presence of three grams of methamphetamine to support Halferty's conviction for Class A felony dealing in methamphetamine.

We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

On April 16, 2007, four officers from the Elkhart County Sheriff's Department were dispatched to a residence at 1536 South Main Street, Elkhart, Indiana to look for Halferty in connection with an outstanding warrant. Upon arriving, the officers knocked on the door, and Deborah Good ("Good") answered. When asked whether she knew Halferty, Good told the officers that he lived in the apartment upstairs.

Three officers proceeded to the upstairs apartment and knocked. The door was opened by a man, later identified as Ernest Hamby ("Hamby"), who told the officers that Halferty was downstairs. Two of the officers returned downstairs, but the third officer noted unusual smells emanating from the apartment and asked Hamby, for officer safety, to show his hands. As Hamby opened the door, the officer could see a knife on the floor near where Hamby had been standing. The officer entered the apartment, secured the knife, and saw an active methamphetamine lab. The offi-

---

**1.**  *See* Ind.Code § 35–48–4–1.1.

**2.**  *See* Ind.Code § 35–48–4–13.

cer placed Hamby and another man found in the apartment in custody. Meanwhile, the other two officers returned downstairs, obtained Good's consent to search the apartment, and found Halferty hiding in the bathroom. The officers took Halferty into custody, secured the scene, and obtained a warrant to search the premises.

Trooper Jason Faulstich of the Indiana State Police, a member of the Methamphetamine Suppression Section, arrived at the scene. Included in the evidence recovered from the scene were ephedrine packages, mason jars containing sludge, tubing, ammonium sulfate, drain cleaner, hypodermic needles, sea salt, coffee filters, a filtering device, a reaction vessel, digital scales, a Coleman fuel can, and lye.

Halferty was charged with dealing in methamphetamine as a Class A felony and maintaining a common nuisance, a Class D felony. At his trial, Kimberly Burrow ("Burrow"), a drug chemist with the Indiana State Police Laboratory who tested items found during the search, testified that the weight of actual methamphetamine recovered from the scene was .40 grams and that the weight of powdered ephedrine/pseudoephedrine found at the scene was 4.61 grams. *Tr.* at 185–89. Trooper Faulstich testified, over defense counsel's objection, that "in general" the conversion ratio between ephedrine/pseudoephedrine to methamphetamine was "usually right around 70, 80 percent" and that one gram of ephedrine/pseudoephedrine would produce "about" .70 or .80 grams of methamphetamine. *Tr.* at 276. In closing, the State referred to Trooper Faulstich's conversion ratio as support for the contention that, considering the yield of methamphetamine from 4.61 grams of ephedrine/pseudoephedrine plus the .40 grams of methamphetamine, Halferty was manufacturing methamphetamine in an amount equal to or greater than three

grams. Halferty was convicted as charged. He now appeals. Additional facts will be added as necessary.

## DISCUSSION AND DECISION

### I. Maintaining a Common Nuisance

■ Halferty first claims that his conviction for maintaining a common nuisance is not supported by sufficient evidence. In reviewing the sufficiency of evidence, we do not reweigh the evidence or assess the credibility of witnesses. *Bruno v. State,* 774 N.E.2d 880, 882 (Ind.2002); *Gaynor v. State,* 914 N.E.2d 815, 818 (Ind.Ct.App. 2009), *trans. denied.* We consider the evidence favorable to the verdict and the reasonable inferences to be drawn therefrom. *Gaynor,* 914 N.E.2d at 818. We will affirm if there is probative evidence from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

■ To convict Halferty of maintaining a common nuisance, pursuant to Indiana Code section 35–48–4–13(b)(2)(A), the State was required to prove that he (1) knowingly or intentionally maintained a building or structure (2) that was used one or more times by persons to unlawfully manufacture controlled substances. As to the second element, the State presented evidence that, on the night in question, the police were called to 1536 South Main Street, Elkhart, Indiana, and found "an active methamphetamine cook going on in Apartment C when [they] entered." *Tr.* at 322. On appeal, Halferty does not challenge that Apartment C was used by persons to unlawfully manufacture methamphetamine. Instead, he contends that, because Hamby was present when the police officers entered Apartment C, and there was evidence that Hamby was there on a regular basis, there is no evidence

that Halferty knowingly or intentionally maintained Apartment C. We disagree.

This court has found that the evidence required to establish that a defendant knowingly or intentionally maintained a building or structure for the purpose of proving maintaining a common nuisance is comparable to the evidence required to prove constructive possession. *Jones v. State*, 807 N.E.2d 58, 67 (Ind.Ct. App.2004), *trans. denied.* "In order to prove constructive possession, the State must show that the defendant has both (1) the intent to maintain dominion and control and (2) the capability to maintain dominion and control over the contraband." *Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999). Likewise, to prove that Halferty maintained control over the apartment for purposes of Indiana Code section 35–48–4–13(b)(2)(A), the State had to show that he had the intent and capability to maintain dominion and control over Apartment C. " 'Control in this sense concerns the defendant's relation to the place where the substance is found: whether the defendant has the power, by way of legal authority or in a practical sense, to control the place where, or the item in which, the substance is found.' " *Jones*, 807 N.E.2d at 65 (quoting *Allen v. State*, 798 N.E.2d 490, 501 (Ind.Ct.App.2003) (citation omitted)).

In this case, Good, who lived at 1536 S. Main Street, Apartment A, testified at trial that Halferty lived upstairs in Apartment C. *Tr.* at 202. Furthermore, the State introduced a utility bill from Indiana Michigan Power, which was addressed to Halferty at 1536 S. Main Street, Apartment C. *State's Ex.* 48. The bill reflected Halferty's electric usage ending March 23, 2007, and had "pay by" due date of April 12, 2007. *Id.* This evidence was sufficient to prove that, at the time of his arrest, Halferty resided at 1536 S. Main Street, Apartment C and, as such, knowingly or intentionally maintained Apartment C, a building that had been used to unlawfully manufacture methamphetamine.

## II. Class A Felony Dealing in Methamphetamine

Halferty next contends that the trial court abused its discretion by permitting Trooper Faulstich to testify as an expert regarding the conversion ratio between the amount of ephedrine/pseudoephedrine and the amount of methamphetamine produced. A trial court's decision to admit testimony is reviewed for an abuse of discretion and will only be reversed where the decision is clearly against the logic and effect of the facts and circumstances before the court. *Hape v. State*, 903 N.E.2d 977, 991 (Ind.Ct.App.2009), *trans. denied.*

Indiana Code section 35–48–4–1.1 provides that a person is guilty of dealing in methamphetamine as a Class A felony if he knowingly or intentionally manufactures at least three grams of methamphetamine. Burrow testified that the weight of actual methamphetamine recovered from the scene was .40 grams and that the weight of powdered ephedrine/pseudoephedrine found at the scene was 4.61 grams. *Tr.* at 185–89. Our court has held that proof of three grams of methamphetamine may be shown with evidence of both finished methamphetamine and methamphetamine that is in the process of being manufactured. *Traylor v. State*, 817 N.E.2d 611, 619 (Ind.Ct.App.2004), *trans. denied.* Because only .40 grams of methamphetamine was found at the scene, Trooper Faulstich's conversion testimony was introduced to allow the jury to find evidence that the 4.61 grams of ephedrine/pseudoephedrine was being used to manufacture the remaining 2.60 grams of methamphetamine.

Halferty contends that Trooper Faulstich's testimony regarding the conversion ratio was improper in the absence of an

appropriate foundation that the scientific principles upon which the testimony rested were reliable. The State asserts that Trooper Faulstich testified as a skilled witness, and as such, the trial court did not abuse its discretion in admitting the testimony. Assuming without deciding that the trial court did not abuse its discretion in allowing Trooper Faulstich to testify regarding the conversion ratio, we *sua sponte* address the issue of whether there was sufficient evidence of three grams of methamphetamine presented to support Halferty's conviction for Class A felony dealing in methamphetamine, and find that there was not.[3]

At trial, Trooper Faulstich described the general process of making methamphetamine. *Tr.* at 262–73. He explained that the key ingredient in the manufacture of methamphetamine is ephedrine/pseudoephedrine. *Id.* at 260–61. The State asked Trooper Faulstich what the conversion ratio would be between the amount of ephedrine/pseudoephedrine placed in a reaction vessel and the amount of methamphetamine produced. Defense counsel lodged an objection pursuant to Indiana Evidence Rule 702; on the basis that the State was attempting to elicit expert testimony without laying a proper foundation that the conversion method was based on recognized a scientific principle. *Id.* at 273. The State responded that it was not asking Trooper Faulstich about a specific

cook, but instead, "talking about [conversion] in general." *Id.* at 275.

Over Halferty's objection, Trooper Faulstich testified that *"in general,"* the conversion ratio between ephedrine/pseudoephedrine to methamphetamine was *"usually* right around 70, 80 percent" and that one gram of ephedrine/pseudoephedrine would produce *"about"* .70 or .80 grams of methamphetamine. *Tr.* at 275, 276 (emphasis added). When questioned about the term "usually," Trooper Faulstich testified that the ratio can change depending on the cooking process, on whether pill binders are stripped from the ephedrine/pseudoephedrine, and on the person who is "cooking" the methamphetamine. *Id.* at 276. He also admitted that, depending on the cook, the ratio of ephedrine/pseudoephedrine to methamphetamine can "fall below 50 percent." *Id.* at 326.

To prove Class A felony dealing in methamphetamine, the State had to prove that Halferty was manufacturing three grams of methamphetamine. The State introduced evidence that Halferty had produced .40 grams of methamphetamine and that he was using the 4.61 grams of ephedrine/pseudoephedrine to produce additional methamphetamine. Trooper Faulstich's ratio conversion testimony was the only evidence to support the contention that, at the time the officers entered Apartment C,

---

3. We raise this issue *sua sponte* based on this court's reasoning in *Miller v. State,* 616 N.E.2d 750 (Ind.Ct.App.1993), in which we stated as follows:

> This court has said that a "conviction of an offense where evidence and reasonable inferences of a material element of the offense are totally lacking [constitutes fundamental error]." "Inasmuch as this fundamental error is apparent on the face of the record, we are compelled to reverse [the defendant's] convictions *sua sponte,* although the issues he raises on appeal do

not involve this error." "Fundamental error is error that, if not rectified, would deny a defendant fundamental due process." The Supreme Court has held: "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

*Id.* at 751 n. 3 (citations omitted).

Halferty was producing the additional 2.60 grams of methamphetamine necessary for the Class A felony conviction. In part, Trooper Faulstich testified that the yield could be as low as fifty percent. Cooking the 4.61 grams of ephedrine/pseudoephedrine at a yield of fifty percent would create about 2.31 grams of methamphetamine—an amount that, even when added to the .40 grams of produced methamphetamine, would produce less than three grams. Trooper Faulstich also testified that the conversion ratio was "in general," "usually," or "about" seventy to eighty percent. *Id.* at 275, 276. The use of these terms does not constitute proof beyond a reasonable doubt. Without the proof of three grams, a conviction for Class A felony dealing in methamphetamine cannot stand.

■ Notwithstanding the State's failure to present sufficient evidence to prove dealing in methamphetamine as a Class A felony, we note that the jury was also instructed that the offense of dealing in methamphetamine as a Class B felony is a lesser included offense. The jury was instructed, "If you find that the State of Indiana proved, beyond a reasonable doubt, that the defendant knowingly manufactured Methamphetamine, but that the amount of the drug involved weighed less than three (3) grams, you should find the defendant guilty of Dealing in Methamphetamine, a Class B felony." *Appellant's App.* at 26. While Trooper Faulstich's conversion ratio was essential to the jury finding that Halferty manufactured three grams of methamphetamine, it was not, however, necessary for a conviction of Class B felony dealing in methamphetamine. Finding .40 grams of methamphetamine at Halferty's apartment, where the production of methamphetamine was underway, was sufficient to convict him of dealing in methamphetamine as a Class B felony. We therefore reverse Halferty's conviction for Class A felony dealing in methamphetamine and remand to the trial court with instructions to enter a conviction for Class B felony dealing in methamphetamine. We also instruct the trial court to revise Halferty's sentence to reflect this change.

Affirmed in part, reversed in part, and remanded with instructions.

FRIEDLANDER, J., and ROBB, J., concur.