**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**ANNE MURRAY BURGESS**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JONATHAN REINER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 20A05-1210-PC-499 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable George W. Biddlecome, Judge
Cause No. 20D03-1102-PC-6

**May 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Petitioner Jonathan Reiner seeks post-conviction relief from his conviction and thirty-year sentence for Class A felony dealing in methamphetamine. Reiner was arrested after being found inside a local residence housing a clandestine methamphetamine laboratory. At trial, Appellee-Respondent the State of Indiana presented evidence that 0.7 grams of finished methamphetamine and at least 2.66 grams of pseudoephedrine were found inside the residence. An Indiana State Police detective also testified that the maximum yield rate from the conversion of pseudoephedrine to methamphetamine is 92 to 93 percent. Applying a 90 percent yield rate to the 2.66 grams of pseudoephedrine, the State argued that Reiner was manufacturing an additional 2.4 grams of methamphetamine, for a sum of 3.1 grams. Reiner claims that his trial counsel was ineffective for failing to raise a competency objection to the detective's yield rate testimony; failing to present evidence challenging the reliability of yield rate evidence in general; and failing to move for a directed verdict on the Class A felony charge on the basis of insufficient evidence as to the amount of methamphetamine being manufactured. Reiner also claims that his appellate counsel was ineffective for failing to challenge the sufficiency of the State's evidence as to the amount of methamphetamine being manufactured. Concluding that neither counsel was ineffective, we affirm.

**FACTS AND PROCEDURAL HISTORY**

The underlying facts of this case were set forth in this court's memorandum decision on Reiner's direct appeal:

> [A]t 10:45 p.m. on February 7, 2008, Elkhart County Deputy Sheriffs Adam Leeper and Evan Witt, along with Sergeant Michael Lee McHenry, responded to a dispatch reporting the possible existence of a meth lab at 27415 County Line Road 24. When the officers arrived at the residence,

2

they observed three vehicles, including a white Ford Thunderbird later confirmed to belong to Reiner. They noticed a strong odor of ether coming from the open windows of the house. Shortly thereafter, a woman emerged from the house, and Sergeant McHenry and Officer Leeper immediately apprehended her. She identified herself as the homeowner [Jerikay Delater] and gave consent to a search of the premises.

When the officers entered the residence, they observed a thick haze and smelled a very strong odor of chemicals associated with the manufacturing of meth. They also observed lithium batteries, ammonium sulfate, lye, a glass pipe, aluminum foil, coffee filters, salts, plastic containers and baggies, Coleman fuel, and other articles associated with the manufacturing of meth. An Indiana State Police Lab Team searched the premises and found additional items including pseudoephedrine, sulfuric acid, soiled coffee filters, homemade cardboard funnels, a propane burner, soda bottles containing white sludge, and cups and bowls containing white and red crushed powder. Lab tests confirmed the presence of meth. The officers found three men in the house: Joseph Moore, Justin Feathers, and Reiner. When they found Reiner, he was standing in the laundry room with his hand on a plastic bottle that contained a chemical and had a tube attached to the top. An expert confirmed that the bottle was an HCL generator, a device used in the production of meth.

The officers arrested Reiner at the scene, and on February 11, 2008, the State charged him with class A felony dealing in methamphetamine.[1]…

*Reiner v. State*, Cause No. 20A05-0907-CR-375, slip op. at 1 (Dec. 17, 2009). Indiana Code section 35-48-4-1.1(a) provides that "[a] person who knowingly or intentionally manufactures … methamphetamine, pure or adulterated … commits dealing in methamphetamine, a Class B felony." "The offense is a Class A felony if the amount of the drug involved weighs three (3) grams or more…." Ind. Code § 35-48-4-1.1(b).

Reiner's jury trial began on March 23, 2009. The State presented evidence that, inside the residence, police found 0.7 grams of finished methamphetamine, a bowl of white powder containing 2.66 grams of pseudoephedrine, and a variety of empty blister packs that would have contained 14.1 grams of ephedrine or pseudoephedrine pills.

_____

[1] Ind. Code § 35-48-4-1.1(b)(1) (2008).

3

Indiana State Police ("ISP") Detective Aaron Campbell testified that the maximum yield rate from the conversion of pseudoephedrine to methamphetamine "[is] like 92 to 93 percent." Trial Tr. p. 355. Detective Campbell further testified that "on average" clandestine laboratories yield methamphetamine at a 60 to 70 percent rate. Trial Tr. p. 356. Applying a 90 percent yield rate to the 2.66 grams of pseudoephedrine found at the residence, the State argued that Reiner was manufacturing 2.4 grams of methamphetamine in addition to the 0.7 grams that had already been produced—a sum of 3.1 grams.

Reiner did not challenge the sufficiency of the State's evidence as to the amount of methamphetamine being manufactured. Rather, he argued that he was not involved in the manufacturing of methamphetamine, had no association with the clandestine laboratory, and was merely present at the residence when police arrived. In support of this defense, Reiner presented the testimony of Feathers, who admitted that he and Delater made and consumed methamphetamine at Delater's residence on the night in question. Afterward, Feathers called Reiner and asked Reiner to pick up him and Moore so that the three men could go to a bar. When Reiner arrived, Feathers invited him inside the residence to wait while Moore finished drinking a beer. The police arrived while Reiner was waiting inside. Reiner also testified at trial, claiming that he had been at the residence for no more than ten minutes before the police arrived. The State challenged Reiner's defense with the testimony of Delater's brother, Thomas Kerns. Kerns testified that he saw Reiner's vehicle parked in front of Delater's residence at approximately 9:00 p.m. on the night in question, nearly two hours before police arrived.

On March 25, 2009, the jury found Reiner guilty as charged, and the trial court sentenced him to thirty years of incarceration. Reiner filed a direct appeal, arguing that the evidence was insufficient to sustain his conviction because he was not involved in the manufacturing of methamphetamine and was merely present at the residence when police arrived. On December 17, 2009, this Court issued its memorandum decision affirming the trial court's judgment.

> Reiner's actions during the commission of the crime support his conviction for dealing in meth. When the officers found him, he was in possession of meth paraphernalia and was venting the HCL generator. Moreover, to the extent he argues that he had arrived just moments before police and that he came to the house merely to give Feathers a ride, we note eyewitness Kerns's testimony that he observed Reiner's "T-bird" parked out front at 9:00 p.m., nearly two hours before police arrived.

*Reiner*, slip op. at 2.

Reiner, *pro se*, filed a petition for post-conviction relief ("PCR") on February 24, 2011. On September 2, 2011, Reiner, by counsel, filed an amended PCR petition, alleging that both his trial and appellate counsel were ineffective. The post-conviction court held an evidentiary hearing on February 28, 2012, at which, Reiner's trial counsel, Thomas Leatherman; his appellate counsel, Marielena Duerring; and ISP forensic scientist Hailey Newton testified.

Trial counsel testified that he received the ISP's lab report prior to trial and that he was aware that the amount of finished methamphetamine found at the residence was 0.7 grams. Trial counsel further testified that he did not have an understanding of or experience with yield rates and was not aware prior to trial that the State would use yield rate evidence to prove the weight element of the Class A felony charge. Trial counsel

5

also testified that it was a tactical approach to argue that Reiner was not involved in the manufacturing of methamphetamine and was merely present at the residence. Trial counsel did not consider objecting to Detective Campbell's yield rate testimony because he was focused on this "merely present" defense. According to trial counsel, "[I]t didn't matter how much [methamphetamine] was there, [Reiner] wasn't involved in the manufacture." PCR Tr. p. 79. Trial counsel, however, did consider challenging the sufficiency of the State's evidence as to the amount of methamphetamine being manufactured, but believed such an argument would have contradicted Reiner's "merely present" defense. Trial counsel admitted that it would have been a "good argument" to move for a directed verdict to reduce the charge from a Class A to a Class B felony, PCR Tr. p. 80, explaining that this would not have compromised Reiner's "merely present" defense because the motion would have been made to the judge without the jury's knowledge.

Appellate counsel testified that she did not consider challenging the sufficiency of the State's evidence as to the amount of methamphetamine being manufactured because the amount of finished methamphetamine coupled with the amount of other material found at the residence indicated that the lab had the potential to produce in excess of 3.0 grams. Appellate Counsel also testified that, at the time she represented Reiner, she believed that yield rate evidence was sufficient to prove the weight element of Class A felony dealing in methamphetamine.

Newton testified that, while the maximum yield rate from the conversion of pseudoephedrine to methamphetamine is 92 percent, the actual yield rate depends on

6

various factors. These include the purity of the precursor—*i.e.*, the amount of pseudoephedrine in a pill—the cook's experience, and the recipe being used. Newton further testified that lab analysts apply the yield rate to the amount of pure pseudoephedrine, not the weight of a pill. Therefore, Newton added, she could not calculate the yield rate of the white powder found at the residence without knowing the amount of pseudoephedrine it contained. She would, however, expect the rate to be much lower than the maximum because of other ingredients in the substance.

The court questioned the relevancy of Newton's testimony concerning pseudoephedrine purity, and the State similarly objected on the ground that Indiana law contemplates a "pure or adulterated" drug in its dealing in methamphetamine statute. The court sustained this objection but allowed Newton's testimony as an offer of proof. In the offer of proof, Newton testified that the yield rate in a clandestine laboratory is generally 30 to 50 percent. And even in a police laboratory, the yield rate can vary from 80 to 90 percent. After cross-examination, Reiner moved to have Newton's testimony admitted into evidence, which motion the post-conviction court denied. On September 10, 2012, the court issued its findings of fact and conclusions of law, denying Reiner's PCR petition.

## DISCUSSION AND DECISION

### *PCR Standard of Review*

Our standard for reviewing the denial of a PCR petition is well-settled:

> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting its judgment. The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. To prevail on appeal from denial of post-

7

conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court…. Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will its findings or conclusions be disturbed as being contrary to law.

*Hall v. State*, 849 N.E.2d 466, 468-69 (Ind. 2006) (internal citations and quotation marks omitted).

## I. Whether Reiner Received Ineffective Assistance of Trial Counsel

We review claims of ineffective assistance of counsel based on the two-pronged standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984):

[A] claimant must demonstrate that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and that the deficient performance resulted in prejudice. Prejudice occurs when the defendant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A reasonable probability arises when there is a "probability sufficient to undermine confidence in the outcome."

*Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). Because an inability to satisfy either prong of this test is fatal to an ineffective assistance claim, we need not evaluate counsel's performance if the claimant suffered no prejudice from that performance. *Vermillion v. State*, 719 N.E.2d 1201, 1208 (Ind. 1999).

## A. Failure to Object

Reiner claims that his trial counsel was ineffective for failing to object to the admission of Detective Campbell's yield rate testimony. "'To prevail on a claim of ineffective assistance due to the failure to object, the defendant must show an objection

8

would have been sustained if made.'" *Benefield v. State*, 945 N.E.2d 791, 799 (Ind. Ct. App. 2011) (quoting *Overstreet v. State*, 877 N.E.2d 144, 155 (Ind. 2007)). Reiner contends that Detective Campbell's yield rate testimony was inadmissible as that of an expert witness under Indiana Evidence Rule 702 because the State failed to demonstrate the reliability of the scientific principles upon which the testimony was based. We find Detective Campbell's testimony to have been admissible as that of a "skilled witness" under Rule 701 and, therefore, conclude that Reiner's claim is without merit.

A skilled witness is one who has "'a degree of knowledge short of that sufficient to be declared an expert under Rule 702, but somewhat beyond that possessed by the ordinary jurors.'" *Linton v. Davis*, 887 N.E.2d 960, 975 (Ind. Ct. App. 2008) (quoting *Mariscal v. State*, 687 N.E.2d 378, 380 (Ind. Ct. App. 1997)), *trans. denied*. "Skilled witnesses not only can testify about their observations, they can also testify to opinions or inferences that are based solely on facts within their own personal knowledge." *Id.* Notably, a police officer's experience and training may provide the requisite foundation under Rule 701. *See Stephenson v. State*, 742 N.E.2d 463, 480 (Ind. 2001).

At trial, Detective Campbell identified himself as an officer with the ISP Methamphetamine Suppression Section who has investigated 168 clandestine laboratories. Detective Campbell added that, to qualify for his position, he underwent a forty-hour certification in dismantling clandestine laboratories, a credential for which he is recertified annually. Given this experience and training, a competency objection to Detective Campbell's testimony would not have been sustained, causing Reiner to suffer no prejudice from trial counsel's failure to object.

9

The dissent argues that Detective Campbell's yield rate testimony fell outside the scope of Rule 701 because it was scientific in nature, and that it was inadmissible under Rule 702 because the State failed to establish the reliability of the scientific principles on which the testimony was based. We do not find that this analysis carries the day given the facts and claims of this particular case. Since Reiner was convicted in 2009, this court has reviewed three cases where an ISP officer's yield rate testimony was offered to prove the weight element of a Class A felony dealing in methamphetamine charge: *Halferty v. State*, 930 N.E.2d 1149 (Ind. Ct. App. 2010), *trans. denied*; *Fancil v. State*, 966 N.E.2d 700 (Ind. Ct. App. 2012), *trans. denied*; and *Clark v. State*, 977 N.E.2d 459, 463 (Ind. Ct. App. 2012), *trans. granted*, *opinion vacated*, 980 N.E.2d 325 (Ind. 2013). In each, the trial court had admitted the testimony as that of a skilled witness under Rule 701 and over the defendant's Rule 702 objection.

In both *Halferty* and *Fancil*, we "assumed without deciding" that the trial court did not abuse its discretion in admitting the yield rate testimony under Rule 701. *Halferty*, 930 N.E.2d at 1153; *Fancil*, 966 N.E.2d at 706. And in *Clark*,[2] we held that the trial court did not abuse its discretion in allowing the yield rate testimony over a Rule 702 objection. *Clark*, 977 N.E.2d at 463. Given that the admissibility of yield rate testimony under Rule 701 remained undecided in 2010, one year after Reiner was convicted, and that it was decided in favor of admission in 2012, three years after his conviction, we cannot say that Reiner's trial counsel was deficient for failing to object to the admission

---

[2] In light of the Indiana Supreme Court's recent grant of transfer in the case of *Clark v. State*, 977 N.E.2d 459 (Ind. Ct. App. 2012), we emphasize that our reliance on that now-vacated decision is limited to the issue of what was professionally reasonable at the time of Reiner's trial in 2009.

of Detective Campbell's yield rate testimony in 2009. We also note that "failure to object is not ineffective assistance of counsel 'if counsel's failure to object was the result of trial strategy.'" *Charlton v. State*, 702 N.E.2d 1045, 1051 (Ind. 1998) (quoting *Potter v. State*, 684 N.E.2d 1127, 1133 (Ind. 1997)). As we discuss in more detail below, not objecting to the State's yield rate evidence was consistent with Reiner "merely present" defense.

### B. Failure to Impeach

Reiner claims that his trial counsel was ineffective for failing to impeach Detective Campbell's yield rate testimony and to present evidence challenging the reliability of yield rate evidence in general. Our review of the record, however, reveals that the absence of such evidence is consistent with trial counsel's defense strategy for Reiner. "We afford great deference to counsel's discretion to choose strategy and tactics, and strongly presume that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 689-90).

At Reiner's post-conviction hearing, trial counsel testified that the tactical approach to Reiner's defense was to argue that Reiner was not involved in the manufacturing of methamphetamine and was merely present at the residence when police arrived. Trial counsel considered challenging the sufficiency of the State's evidence as to the amount of methamphetamine being manufactured, but chose not to focus on it. According to trial counsel, "[I]t didn't matter how much [methamphetamine] was there, [Reiner] wasn't involved in the manufacture." PCR Tr. p. 79. Moreover, trial counsel testified that challenging the sufficiency of the State's evidence as to the amount of

methamphetamine being manufactured would have contradicted Reiner's "merely present" defense. *See Timberlake v. State*, 753 N.E.2d 591, 606 (Ind. 2001) (concluding that trial counsel's decision not to pursue an alternative defense was a reasonable professional decision to avoid seemingly inconsistent defenses). In light of trial counsel's chosen defense strategy, his failure to impeach Detective Campbell's testimony and to otherwise challenge the State's yield rate evidence was not deficient.

## C. Failure to Move for Directed Verdict

Reiner claims that his trial counsel was ineffective for failing to move for a directed verdict as to the Class A felony charge after the State allegedly failed to prove the weight element of that crime beyond a reasonable doubt. It has been held generally that "failure of trial counsel to move for a directed verdict does not create sufficient prejudice to result in a finding of ineffective assistance of counsel." *Siglar v.* State, 541 N.E.2d 944, 948 (Ind. 1989); *accord Robles v. State*, 612 N.E.2d 196, 198 (Ind. Ct. App. 1993) (citing *Hunter v. State*, 578 N.E.2d 353, 357 (Ind. 1991)); *see Gajdos v. State*, 462 N.E.2d 1017, 1024 (Ind. 1984). Moreover, a directed verdict is appropriate only if there is "a total absence of evidence as to the guilt of the accused or where there is no conflict in the evidence and it is susceptible only to an inference in favor of the accused." *State v. Casada*, 825 N.E.2d 936, 938-39 (Ind. Ct. App. 2005).

Here, the State presented Detective Campbell's testimony that the maximum yield rate from the conversion of pseudoephedrine to methamphetamine "[is] like 92 to 93 percent." Trial Tr. p. 355. From this, the State asserted that, at a 90 percent rate, the 2.66 grams of pseudoephedrine found at the residence would have yielded 2.4 grams of

methamphetamine. Combining this amount with the 0.7 grams of finished methamphetamine found at the residence, the State presented a *prima facie* case that Reiner was manufacturing 3.0 or more grams of the drug.

Reiner contends that a directed verdict would have been granted because yield rate evidence is insufficient to prove the weight element of Class A felony dealing in methamphetamine. Reiner relies on our decisions in *Halferty* and *Fancil*, in which we held that a police officer's use of general terms to describe the yield rate from the conversion of pseudoephedrine to methamphetamine renders the officer's testimony insufficient to prove the weight element of Class A felony dealing in methamphetamine beyond a reasonable doubt. *See e.g.*, *Halferty*, 930 N.E.2d at 1154 (Officer testified that the yield rate was "in general," "usually," or "about" 70 to 80 percent.). These cases, however, were decided after Reiner's conviction in 2009 and are therefore inapplicable to the instant matter. "For purposes of ineffective assistance of counsel claims, the law requires consideration of legal precedent available to counsel at the time of his representation of the accused, and counsel will not be deemed ineffective for not anticipating or initiating changes in the law." *Sweeney v. State*, 886 N.E.2d 1, 8 (Ind. Ct. App. 2008) (citing *Gann v. State*, 550 N.E.2d 73, 75 (Ind. 1990)), *trans. denied*.

Reiner also relies on the Indiana Supreme Court's decision in *Halsema v. State*, 823 N.E.2d 669 (Ind. 2005). There, the court held:

> [I]n order to prove the element of weight of drugs or controlled substances the State must either offer evidence of its actual, measured weight or demonstrate that the quantity of the drugs or controlled substances is so large as to permit a reasonable inference that the element of weight has been established.

13

*Halsema*, 823 N.E.2d at 674.[3] Reiner contends that the State's yield rate evidence does not prove the "actual, measured weight" of methamphetamine. But Indiana law "does not require that the [manufacturing] process be completed or that there actually be a final product before the [dealing in methamphetamine] statute applies." *Traylor v. State*, 817 N.E.2d 611, 619 (Ind. Ct. App. 2004) (finding liquid containing pseudoephedrine and weighing more than 3.0 grams sufficient to prove Class A felony dealing in methamphetamine), *trans. denied*; *see Bush v. State*, 772 N.E.2d 1020 (Ind. Ct. App. 2002). Given the legal precedent available at the time of trial counsel's representation of Reiner, we conclude that a directed verdict on the Class A felony charge would have been inappropriate and, therefore, that Reiner suffered no prejudice.

## II. Whether Reiner Received Ineffective Assistance of Appellate Counsel

We review claims of ineffective assistance of appellate counsel using the same two-pronged test applicable to claims of trial counsel ineffectiveness. *Ben-Yisrayl*, 729 N.E.2d at 106. The claimant must show that counsel was deficient in his performance and that the deficiency resulted in prejudice. *Id.* Reiner argues that his appellate counsel was ineffective for failing to challenge the sufficiency of the State's evidence as to the amount of methamphetamine being manufactured.

Ineffective assistance claims at the appellate level generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler v. State*, 690 N.E.2d 188, 193-94 (Ind. 1997). Reiner's

---

[3] The issue presented in *Halsema* was whether jurors, having been presented with no evidence concerning the weight of a bag containing methamphetamine, could examine the bag and "use their common sense and experience" to determine whether the methamphetamine weighed at least three grams. *Halsema v. State*, 823 N.E.2d 669, 673 (Ind. 2005).

14

claim falls into the second category, for which we have noted the need for a reviewing court to be deferential to appellate counsel:

> [T]he reviewing court should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made.

*Timberlake*, 753 N.E.2d at 605 (quoting *Bieghler*, 690 N.E.2d at 194). Put simply, "[a] defendant may establish that his appellate counsel's performance was deficient where counsel failed to present a significant and obvious issue for reasons that cannot be explained by any strategic decision." *Ben-Yisrayl*, 738 N.E.2d at 261.

At his post-conviction hearing, Reiner's appellate counsel testified that she did not argue that the State presented insufficient evidence because the amount of finished methamphetamine coupled with the amount of other material found at the residence indicated that the lab had the potential to produce in excess of 3.0 grams. Moreover, she stated that, at the time she represented Reiner, she believed that yield rate evidence was sufficient to prove the weight element of the Class A felony charge.

Here, Reiner again relies on our decision in *Halferty*. But like trial counsel, "[a]ppellate counsel cannot be held ineffective for failing to anticipate or effectuate a change in the existing law." *Donnegan v. State*, 889 N.E.2d 886, 893 (Ind. Ct. App. 2008), *trans. denied*. Because *Halferty* was decided after Reiner's conviction in 2009, it is inapplicable to the instant matter. Reiner also claims that appellate counsel could have relied on *Halsema* to challenge the State's use of yield rate evidence to prove the amount of methamphetamine being manufactured. But, as explained above, it was reasonable for

15

appellate counsel to conclude that the State's yield rate evidence was sufficient given the case law at that time. *See Traylor*, 817 N.E.2d at 619, 621. Appellate counsel did not provide Reiner ineffective assistance.

### III. Admissibility of Newton Testimony

In addition to his ineffective assistance claims, Reiner argues that the post-conviction court abused its discretion in not admitting ISP forensic scientist Newton's testimony regarding pseudoephedrine purity and the unreliability of yield rate evidence. Reiner claims that this evidence was admissible to prove prejudice resulting from his trial counsel's failure to impeach Detective Campbell's yield rate testimony. However, having already held that Reiner's trial counsel was not deficient for failing to present evidence challenging the reliability of Detective Campbell's testimony and yield rate evidence in general, we conclude that Reiner was not prejudiced by the post-conviction court's exclusion of Newton's testimony. Even assuming the court abused its discretion, that error was harmless under Ind. Trial Rule 61.

The judgment of the post-conviction court is affirmed.

RILEY, J., concurs.

BROWN, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

JONATHAN REINER,             )
)
    Appellant-Petitioner,      )
)
        vs.                )     No. 20A05-1210-PC-499
)
STATE OF INDIANA,        )
)
    Appellee-Respondent.     )

**BROWN, Judge, dissenting**

I respectfully dissent from the majority's holding that Reiner did not receive ineffective assistance of trial counsel and appellate counsel.

The majority notes that, at Reiner's jury trial, the State presented evidence that the police found 0.7 grams of finished methamphetamine and 2.66 grams of pseudoephedrine. Detective Campbell testified that the maximum yield rate from the conversion of pseudoephedrine to methamphetamine is "like 92 to 93 percent" and that "on average" clandestine laboratories yield methamphetamine at a 60 to 70 percent rate. Slip op. at 4 (citing Trial Transcript at 355-356). The State argued, applying a ninety-percent yield rate to the 2.66 grams of pseudoephedrine found at the residence, that Reiner was manufacturing 2.4 grams of methamphetamine in addition to the 0.7 grams

17

that had already been produced for a total of 3.1 grams.

The majority further notes that Reiner's trial counsel testified at the post-conviction hearing that he did not have an understanding of or experience with yield rates and was not aware prior to trial that the State would use yield rate evidence to prove the weight element of the class A felony charge. Also, the majority notes that Reiner's appellate counsel testified that she did not consider challenging the State's evidence as to the amount of methamphetamine being manufactured. At the post-conviction hearing, Reiner presented the testimony of a forensic scientist who testified that the actual yield rate from the conversion of pseudoephedrine to methamphetamine depends on various factors including the purity of the precursor, the cook's experience, and the recipe being used, that lab analysts apply the yield rate to the amount of pure pseudoephedrine, and that the yield rate in a clandestine laboratory is generally thirty to fifty percent and even in a police laboratory can vary from eighty to ninety percent.

Reiner claims that his trial counsel was ineffective for failing to object to the admission of the conversion ratio or yield rate evidence, to impeach that evidence, and to challenge the sufficiency of the evidence to support his class A felony conviction and that his appellate counsel was ineffective for failing to challenge the conversion evidence on appeal. The majority finds that Detective Campbell's testimony was admissible as that of a skilled witness under Ind. Evidence Rule 701 and that therefore Reiner's claim is without merit. Specifically, the majority notes that Detective Campbell testified that he had investigated 168 clandestine laboratories and had undergone a forty-hour certification in dismantling clandestine laboratories.

1.      Failure to Challenge the Admissibility of the Evidence

To the extent Reiner argues that his trial counsel was ineffective for failing to challenge the admissibility of Detective Campbell's testimony regarding yield rates, Ind. Evidence Rule 701 provides:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact at issue.

This court has noted that a skilled witness is one who has a degree of knowledge short of that sufficient to be declared an expert under Rule 702 but somewhat beyond that possessed by the ordinary jurors. Mariscal v. State, 687 N.E.2d 378, 380 (Ind. Ct. App. 1997), reh'g denied, trans. denied.

> In addition, Ind. Evidence Rule 702 provides:
>
> (a)      If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
>
> (b)      Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

In cases governed by Rule 702, Indiana courts assess the reliability of expert scientific evidence by considering the factors set forth in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993), with regard to the analogous federal evidence rule.[4] Mogg v. State, 918 N.E.2d 750, 756 (Ind. Ct. App. 2009). The Daubert

---

[4] The Indiana Supreme Court has explained:

19

factors include whether the scientific theory or technique (1) can be and has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential error rate; (4) is governed by maintained standards controlling its operation; and (5) has gained widespread acceptance in a relevant scientific community. Id. (citing 509 U.S. at 593-594; Burnett v. State, 815 N.E.2d 201, 206 (Ind. Ct. App. 2004) (noting this list of factors is "non-exclusive"), reh'g denied). Although all of these factors and others may be relevant, none is by itself dispositive, and not all need be present for a trial court to find the proffered evidence rests upon reliable principles. Id. (citing McGrew v. State, 682 N.E.2d 1289, 1292 (Ind. 1997)). However, the proponent of the expert scientific testimony bears the burden of persuading the trial court it is more likely than not that the scientific principles upon which the testimony rests are reliable. Id. (citing Burnett, 815 N.E.2d at 206).

In addition, this court has stated that "[q]ualification under Rule 702 (and hence designation as an expert) is only required if the witness's opinion is based on information received from others pursuant to [Indiana Evidence] Rule 703 or on a hypothetical question." Farrell v. Littell, 790 N.E.2d 612, 617 (Ind. Ct. App. 2003) (quoting 13 ROBERT LOWELL MILLER, JR., INDIANA EVIDENCE § 701.105 at 321 (2d 1995)). "The

> The concerns driving Daubert [interpreting Federal Rule of Evidence 702] coincide with the express requirement of Indiana Rule of Evidence 702(b) that the trial court be satisfied of the reliability of the scientific principles involved. Thus, although not binding upon the determination of state evidentiary law issues, the federal evidence law of Daubert and its progeny is helpful to the bench and bar in applying Indiana Rule of Evidence 702(b).

Steward v. State, 652 N.E.2d 490, 498 (Ind. 1995).

testimony of an observer, skilled in an art or possessing knowledge beyond the ken of the average juror may be nothing more than a report of what the witness observed, and therefore, admissible as lay testimony," and "[t]his type of evidence is not a matter of 'scientific principles' governed by Indiana Evidence Rule 702(b); rather, it is a matter of the observations of persons with specialized knowledge." Id.

While a police officer may give skilled witness testimony based on his or her observations and experience, including in connection with his or her experience with the cleanup of clandestine methamphetamine laboratories, the officer is nevertheless prohibited from testifying as to scientific or technical principles. In this case, while Detective Campbell may have had experience qualifying him to testify as a skilled witness, his specific testimony regarding maximum and average conversion ratios and yield rates is information that is scientific or technical in nature. Only an expert witness is permitted to testify regarding scientific, technical, or other specialized knowledge. Detective Campbell was not qualified as an expert witness under Ind. Evidence Rule 702 to testify as to any scientific or technical principles or methodology used to reach his conclusion. Under the evidentiary rules pertaining to expert and skilled witnesses, the admission of testimony regarding the determination of the yield rate from the conversion of pseudoephedrine to methamphetamine under various circumstances is a determination which requires expert scientific or technical testimony. See Hape v. State, 903 N.E.2d 977, 992-993 (Ind. Ct. App. 2009) (finding that an officer's testimony regarding "dose and dealing amounts" and "the relationship between quantity [of methamphetamine] and personal use" was properly admitted as that of a skilled witness because it was rationally

based upon the officer's observation of the drugs in light of his experience, but also finding that the officer's testimony regarding "how much methamphetamine it takes for a person to get high" was improperly admitted because such information "is scientific in nature," only an expert witness is permitted to testify regarding scientific knowledge, and the officer "did not testify as to any scientific principles or methodology used to reach his conclusion," and thus holding that "under the evidentiary rules pertaining to expert and skilled witnesses, the admission of testimony regarding the amount of methamphetamine necessary to create a high was improper"), trans. denied; cf. Davis v. State, 791 N.E.2d 266, 269 (Ind. Ct. App. 2003) (noting that an officer with experience investigating narcotics crimes was qualified to testify as a skilled witness regarding the packaging and amounts of cocaine related to dealing), reh'g denied, trans. denied. Reiner's trial counsel failed to challenge the admissibility of the conversion ratio or yield rate testimony under Ind. Evidence Rules 702 or 701 and, with respect to Evidence Rule 702, to argue that the State failed to demonstrate the reliability of the scientific principles upon which the testimony was based. This failure by Reiner's trial counsel to challenge the admissibility of the evidence used to support the weight element of the class A felony charge and the enhancement from a class B to a class A felony fell below an objective standard of reasonableness which undermines confidence in the outcome.

The majority observes that this court's opinions in Halferty v. State, 930 N.E.2d 1149, 1151 (Ind. Ct. App. 2010), reh'g denied, trans. denied; Fancil v. State, 966 N.E.2d 700, 703 (Ind. Ct. App. 2012), trans. denied; and Clark v. State, 977 N.E.2d 459 (Ind. Ct. App. 2012), trans. granted, opinion vacated (Ind. Jan. 4, 2013), each discussed in more

22

detail in Part 2 below relating to the failure of Reiner's trial counsel to challenge the sufficiency of the evidence in support of the enhancement, were decided after Reiner's conviction; that the Halferty and Fancil opinions assumed without deciding that the trial court did not abuse its discretion in admitting certain yield rate testimony under Trial Rule 701; that Clark, while the opinion has since been vacated, held that the trial court did not abuse its discretion in allowing yield rate testimony over a Trial Rule 702 objection;[5] and that the failure of Reiner's counsel to object to the State's yield rate evidence was consistent with Reiner's "merely present" defense. I note that the fact that this court's opinions in Halferty, Fancil, and Clark were issued after Reiner's conviction does not necessarily mean that the conversion ratio or yield rate evidence introduced by the State in this case was admissible under Trial Rules 701 or 702 absent a demonstration that Detective Campbell qualified as an expert witness or that Reiner's counsel was relieved of the obligation to challenge the testimony based upon the established rules of evidence.[6] Neither Halferty nor Fancil expressly addressed the issue, and this court's

---

[5] In Clark, this court found that the trial court did not abuse its discretion in allowing a police officer to testify under Ind. Evidence Rule 701. 977 N.E.2d at 463.

[6] In the context of a claim of ineffective assistance of appellate counsel related to an alleged failure to raise a sentencing issue of first impression, the Indiana Supreme Court in Reed v. State made the following comments:

> It is certainly true that appellate counsel cannot be held ineffective for failing to anticipate or effectuate a change in existing law. And it is equally true that an ineffective assistance claim cannot be based upon counsel's failure to argue legal reasoning of cases not yet decided at the time of appeal. But failing to raise an issue of first impression where a plain reading of the statute demonstrated that Reed is entitled to immediate relief—a reduction from eighty years in prison to fifty-five years—is sufficient to demonstrate that this unraised issue was significant and obvious from the face of the record. We agree with the observation of the Pennsylvania Supreme Court that "this Court . . . has never relieved counsel of the obligation to vindicate his client's interests under existing statutory provisions." Commonwealth v. Hughes, 581 Pa. 274, 865 A.2d

23

opinion in Clark holding that yield rate evidence is admissible under Trial Rule 701 has been vacated and the case transferred to the Indiana Supreme Court.

Moreover, in my view, there is no question that the conversion ratio or yield rate testimony allowed into evidence by the trial court without any objection by Reiner's trial counsel is precisely the sort of evidence which requires scientific or technical expertise under the Indiana Evidence Rules and Indiana case law as discussed above. In addition, while Reiner's trial counsel may have stated at the post-conviction hearing that he did not consider objecting to the yield rate testimony because he was focused on a "merely present" defense, I note that the conversion ratio evidence presented by the State pertained solely to the alleged quantity of methamphetamine manufactured at the scene or intended to be manufactured based upon the quantity of pseudoephedrine discovered at the scene, that the evidence was pertinent only to the weight element of the class A felony charge and the enhancement of the offense from a class B to a class A felony, and that any objection or challenge to the conversion ratio or yield rate testimony would not have undermined or compromised Reiner's defense.

Accordingly, I would find that Reiner's trial counsel provided ineffective assistance in failing to challenge the yield rate testimony which was used to prove the weight element of the class A felony charge.

761, 795 (2004) (finding "merit" to a claim that counsel rendered ineffective assistance for failing to raise an issue on appeal even though no controlling decisional law existed at the time of trial and appeal). See also Ex Parte Welch, 981 S.W.2d 183, 185 (Tex. Crim. App. 1998) (finding ineffective assistance for counsel's failure to raise on appeal a matter of first impression declaring "it should have been evident from a plain reading of the [applicable] statute itself" that defendant was entitled to relief).

856 N.E.2d 1189, 1197 (Ind. 2006) (certain citations omitted).

2.      Failure to Challenge the Sufficiency of the Evidence

To the extent that Reiner argues his trial and appellate counsel provided ineffective assistance by failing to challenge the sufficiency of the evidence supporting his class A felony conviction, several opinions shed light on the evidence the State must present in order to prove the quantity of drugs beyond a reasonable doubt where the actual, measured weight of the drugs is not available.

In Halsema v. State, the Indiana Supreme Court addressed whether there was sufficient evidence that the drugs seized from the residence weighed at least three grams and noted that the weight of the drugs was an essential element of the offense and that as with any other essential element it must be proven by the State beyond a reasonable doubt. 823 N.E.2d 668, 673 (Ind. 2005). The Court noted that a juror's ability to determine the existence of a fact in issue based on his or her common sense and experience is not unlimited. Id. at 674. The Court held that "in order to prove the element of weight of drugs or controlled substances, the State must either offer evidence of its actual, measured weight or demonstrate that the quantity of the drugs or controlled substances is so large as to permit a reasonable inference that the element of weight has been established." Id. The Court concluded that the record did not support "the view that the quantity of methamphetamine seized from the bedroom dresser drawer was so large that the jury could infer that it weighed at least three grams" and, accordingly, reversed the convictions for possession of methamphetamine as Class A felonies. Id. at 675.

In Harmon v. State, the State presented evidence establishing that the total weight of crystallized methamphetamine recovered from the scene was 1.34 grams and presented

additional samples of liquid taken from several vessels, and a jury found Harmon guilty of Class A felony dealing in methamphetamine by manufacturing. 971 N.E.2d 674, 675 (Ind. Ct. App. 2012), trans. denied. On appeal, this court noted that the State presented no forensic evidence establishing the actual, measured weight of the contents of the vessels. Id. at 678. The court discussed Halsema, acknowledged that the Court "gave virtually no guidance as to just how much of a drug is required to establish that the quantity is large enough to permit a reasonable inference that the weight element of a drug offense has been satisfied absent evidence of the drug's actual, measured weight," and held that the State had not presented sufficient evidence to prove that the quantity of liquid methamphetamine base was so large as to permit a reasonable inference that the weight element of the charge had been established, noting that the samples taken were quite small. Id. at 679-680. The court found that "the State's inference that Harmon must have manufactured more than three grams of crystallized methamphetamine stretches reason beyond its breaking point" and reduced his conviction for class A felony dealing in methamphetamine to a class B felony. Id. at 681-682.

In Halferty v. State, Halferty was charged with dealing in methamphetamine as a class A felony. 930 N.E.2d 1149, 1151 (Ind. Ct. App. 2010), reh'g denied, trans. denied. At trial, a drug chemist testified that the weight of actual methamphetamine recovered from the scene was .40 grams and that the weight of powdered ephedrine/pseudoephedrine found at the scene was 4.61 grams. Id. at 1151. An Indiana trooper testified that in general the conversion ratio between ephedrine/pseudoephedrine to methamphetamine was "usually right around 70, 80 percent" and that one gram of

ephedrine/pseudoephedrine would produce "about" .70 or .80 grams of methamphetamine, and in closing the State referred to the trooper's conversion ratio as support for the contention that, considering the yield of methamphetamine from 4.61 grams of ephedrine/pseudoephedrine plus the .40 grams of methamphetamine, Halferty was manufacturing methamphetamine in an amount equal to or greater than three grams. Id. Halferty was convicted as charged. Id.

On appeal, this court noted that, when questioned about the term "usually," the trooper testified that the ratio can change depending on the cooking process, on whether pill binders are stripped from the ephedrine/pseudoephedrine, and on the person who is "cooking" the methamphetamine, and the trooper also testified that, depending on the cook, the ratio of ephedrine/pseudoephedrine to methamphetamine can "fall below 50 percent." Id. at 1153. The court held that the trooper's conversion ratio testimony was the only evidence to support the contention that Halferty was producing the additional 2.60 grams of methamphetamine necessary for the class A felony conviction, that the trooper testified that the yield could be as low as fifty percent, and that cooking the 4.61 grams of ephedrine/pseudoephedrine at a yield of fifty percent would create about 2.31 grams of methamphetamine, which was an amount that, even when added to the .40 grams of produced methamphetamine, would produce less than three grams. Id. at 1153-1154. The court also held that the trooper testified that the conversion ratio was "in general," "usually," or "about" seventy to eighty percent and that the use of these terms does not constitute proof beyond a reasonable doubt. Id. at 1154. The court reduced Halferty's conviction for class A felony dealing in methamphetamine to a class B felony.

27

Id. at 1154.

In Fancil v. State, this court held that the State charged Fancil with dealing in three or more grams of meth, and to prove that Fancil manufactured pseudoephedrine found at his residence into three or more grams of meth, the State called a detective experienced in meth manufacturing to testify regarding the conversion ratio of pseudoephedrine to meth. Fancil v. State, 966 N.E.2d 700, 703 (Ind. Ct. App. 2012), trans. denied. The detective testified that "you, could" use fifteen grams of pseudoephedrine to manufacture five grams of meth. Id. The court noted that the detective processed 450 clandestine labs and interviewed numerous "cooks" regarding their processes for manufacturing meth. Id. at 704. The detective testified at trial that, in lab settings, he achieved a pseudophedrine to meth conversion ratio of about ninety percent and that Fancil was a more experienced cook. Id. at 705. This court discussed the holding in Halferty and "similarly conclude[d] that [the detective's] testimony does not constitute proof beyond a reasonable doubt that Fancil manufactured three or more grams of meth . . . as the State had charged." Id. at 707. The court held that the general meth yield ratio presented by the State was "the sort deemed insufficient" in Halferty and that the testimony was not proof beyond a reasonable doubt that Fancil manufactured three or more grams of meth. Id. The court reduced Fancil's conviction for a class A felony dealing in meth to a class B felony. Id. at 710.[7]

_____

[7] As noted by the majority, the Indiana Supreme Court has granted transfer in Clark v. State, in which this court found that the trial court did not abuse its discretion in allowing a police officer to testify, under Ind. Evidence Rule 701, that his experience, when he did cooks himself, was that the quantity of methamphetamine after the HC1 phase was over fifty percent of the amount of pseudoephedrine. 977 N.E.2d 459 (Ind. Ct. App. 2012), trans. granted, opinion vacated (Ind. Jan. 4, 2013). The Court has not

Based upon the holdings and reasoning in <u>Halferty</u> and <u>Fancil</u>, Detective Campbell's testimony regarding the conversion ratio or yield rate from the conversion of pseudoephedrine to methamphetamine does not constitute proof beyond a reasonable doubt that Reiner manufactured three of more grams of methamphetamine. In order to convict Reiner of the class A felony conviction, the State needed to show, considering the yield of methamphetamine from 2.66 grams of pseudoephedrine and the fact that police found 0.7 grams of finished methamphetamine, that Reiner was manufacturing methamphetamine in an amount equal to or greater than three grams. In order to obtain this result, the State was required to prove beyond a reasonable doubt that the conversion ratio between pseudoephedrine to methamphetamine was approximately 86.47 percent.[8] According to the majority, Detective Campbell testified that the *maximum* yield rate from the conversion of pseudoephedrine to methamphetamine is "like 92 to 93 percent," but that "on average" clandestine laboratories yield methamphetamine at a 60 to 70 percent rate. Slip op. at 4 (citing Trial Transcript at 355-356).

Similar to <u>Halferty</u>, where this court noted that the evidence showed that the yield could be as low as fifty percent and that yield would create an amount of methamphetamine that, even when added to the amount of produced methamphetamine, totaled less than three grams, <u>see</u> <u>Halferty</u>, 930 N.E.2d at 1153-1154, in this case Detective Campbell testified that *on average* clandestine laboratories yield

---

yet issued an opinion in <u>Clark</u>.

[8] Applying a conversion ratio or yield rate of 86.47 percent to 2.66 grams of pseudoephedrine produces approximately 2.3 grams of methamphetamine which, when added to the 0.7 grams of finished methamphetamine found at the scene, equals approximately three grams.

29

methamphetamine at a sixty to seventy percent rate, and applying the yield rate of even seventy percent would create about 1.862 grams of methamphetamine, which is an amount that, when added to the 0.7 grams of finished methamphetamine, would produce less than three grams of methamphetamine in total. As a result, under the holdings of Halferty and Fancil, the testimony presented by the State does not constitute proof beyond a reasonable doubt that Reiner manufactured or intended to manufacture three or more grams of methamphetamine. The general conversion ratio or yield rate testimony presented by the State in this case is the precise "sort deemed insufficient" in Fancil and Halferty. See Fancil, 966 N.E.2d at 707.

The majority notes that Reiner's trial counsel testified at the post-conviction hearing that he did not have an understanding of or experience with yield rates and was not aware prior to trial that the State would use yield rate evidence to prove the weight element of the class A felony charge. In addition, Reiner's counsel admitted that it would have been a "good argument" to move for a directed verdict to reduce the charge from a class A to a class B felony. Moreover, as noted in Part 1 above, the yield rate evidence presented by the State pertained solely to the alleged quantity of methamphetamine manufactured at the scene or intended to be manufactured based upon the quantity of pseudoephedrine discovered at the scene, and thus the evidence was pertinent only to the weight element of the class A felony charge and the enhancement of the offense from a class B to a class A felony. As a result, a challenge to the sufficiency of or an attempt to impeach the State's yield rate evidence used to support the enhancement would not have compromised or undermined Reiner's "merely present" defense.

30

Even though the <u>Halferty</u> and <u>Fancil</u> opinions had not yet been issued at the time of Reiner's trial, I conclude that, at a minimum, the failure of Reiner's trial counsel to challenge or to attempt to impeach the conversion ratio or yield rate testimony or challenge the evidence as insufficient to support the class A felony conviction fell below an objective standard of reasonableness which undermines confidence in the outcome based upon the Court's statements in <u>Halsema</u>, the fact that conversion ratios or yield rates could be much lower than 86.47 percent in a clandestine lab depending upon the cook and other factors (and in fact Detective Campbell testified in part to that effect), and the acknowledgement by Reiner's trial counsel of the strength of the argument that the evidence was insufficient to support the weight element of the class A felony charge and the enhancement from a class B to a class A felony.

Moreover, the majority notes that Reiner's appellate counsel testified that she did not consider challenging the State's evidence as to the amount of methamphetamine being manufactured. The Court in <u>Halsema</u> concluded that the record did not support "the view that the quantity of methamphetamine seized from the bedroom dresser drawer was so large that the jury could infer that it weighed at least three grams" and, accordingly, reversed the convictions for possession of methamphetamine as class A felonies. 823 N.E.2d at 675. Reiner's appellate counsel failed to raise an issue which was significant and obvious from the information available in the trial record. <u>See</u> <u>Timberlake v. State</u>, 753 N.E.2d 591, 606 (Ind. 2001) (stating that to prevail on a claim of ineffective assistance of appellate counsel, a defendant must show from the information available in the trial record or otherwise known to appellate counsel that appellate

31

counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy). Subsequent opinions from this court reversed class A felony convictions which were premised on conversion ratio or yield rate testimony which failed to show the weight of methamphetamine beyond a reasonable doubt. Reiner received ineffective assistance of appellate counsel to the extent his appellate counsel failed to challenge on appeal his class A felony conviction on the grounds that the State failed to show the essential element of the weight of methamphetamine manufactured as charged.

For the foregoing reasons, I would conclude that Reiner has demonstrated that he received ineffective assistance of trial counsel for failure to challenge the admissibility of the evidence regarding the yield rate from the conversion of pseudoephedrine to methamphetamine, that he received ineffective assistance of trial and appellate counsel for failure to challenge the evidence as insufficient to support the class A felony, and that the post-conviction court erred in denying Reiner's petition for post-conviction relief.