## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 05 2019, 5:36 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Angela Sanchez
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark A. Eason, Jr.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 5, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2323<br><br>Appeal from the Elkhart Circuit Court<br><br>The Honorable Michael A. Christofeno, Judge<br><br>Trial Court Cause No.<br>20C01-1707-F2-21 |

**Mathias, Judge.**

# Case Summary and Issue

Mark A. Eason, Jr. ("Eason") appeals his convictions in the Elkhart Circuit Court of Level 2 felony dealing in a controlled substance and Level 2 felony dealing in a narcotic drug. Eason argues there is insufficient evidence to support his convictions. We affirm.

# Facts and Procedural History

In April 2017, a confidential cooperating source informed the Elkhart County Intelligence and Covert Enforcement Unit ("ICE") that Eason was dealing heroin in Elkhart County. Tr. Vol. II, p. 82. The source helped ICE arrange a controlled buy from Eason on May 4, 2017. *Id*. at 86. The buy was audio and video recorded. *Id*. at 169. Eason gave an undercover officer, UC 150, a bag with brown powder in exchange for $1,900. *Id*. at 87, 175–76. The substance field tested positive for heroin. *Id*. at 105.

UC 150 arranged a second controlled buy with Eason on May 9, 2017 to purchase one ounce of heroin. *Id*. at 181–83. This buy was also audio and video recorded. *Id*. at 186. Eason informed UC 150 that the price for one ounce of heroin was $3,625 and accepted $3,650 from UC 150 because Eason believed the bag might be over an ounce. *Id*.

Nicole Kay ("Kay"), a forensic scientist with the Indiana State Police, conducted testing to identify the substances purchased on May 4 and 9, 2017. *Id*. at 202. She conducted three tests on each substance: ultraviolet spectrometry, gas chromatography-mass spectrometry ("GCMS"), and thin

layer chromatography. *Id*. at 200–01. These tests are generally accepted and relied on in forensic science and are used throughout Indiana to determine the presence of drugs. *Id*. at 201–02.

[5] The substance from May 4, 2017 weighed 10.04 grams. *Id*. at 205. The first test, ultraviolet spectrometry, was inconclusive. *Id*. at 206. Kay testified that inconclusive ultraviolet spectrometry results commonly occur when a substance is a mixture and clarified that an inconclusive result does not mean a substance does not contain illegal substances. *Id*. at 206–07. Kay then ran GCMS. The first run was weak, indicating but not confirming the presence of heroin. *Id*. at 233. A second run was strong enough to confirm the presence of heroin. *Id*. at 234. Finally, thin layer chromatography was positive for heroin. *Id*. at 212. Kay testified the substance from the May 4, 2017 controlled buy contained heroin. *Id*.

[6] Kay followed the same process for the substance obtained during the May 9, 2017 controlled buy. The substance weighed 29.28 grams. *Id*. at 216. The ultraviolet spectrometry test was again inconclusive, and the first run of GCMS was weak. *Id*. at 216, 233. The second run of GCMS was also faulty. *Id*. at 234. Kay concentrated the substance and the third analysis positively confirmed the presence of fentanyl, a Schedule II controlled substance. *Id*. at 234–35. Thin layer chromatography was also positive for fentanyl. *Id*. at 217. Kay testified the substance from May 9, 2017 contained fentanyl. *Id*. at 218.

[7] The State charged Eason with Level 2 felony dealing in a controlled substance and Level 2 felony dealing in a narcotic drug.[1] Appellant's Conf. App. p. 53. The State also alleged Eason is an habitual offender. *Id*. at 54. At the April 16, 2018 bench trial, the trial court found Eason guilty of both counts, and Eason admitted to being an habitual offender. Tr. Vol. III, pp. 25, 28. The court sentenced Eason to an aggregate 45-year sentence, with 5 years suspended to probation.[2] Eason now appeals, arguing the State failed to present sufficient evidence to support his convictions.

## Standard of Review

[8] In examining the sufficiency of the evidence, the court will consider only the evidence most favorable to the judgment and the reasonable inferences that can be drawn therefrom. *Morgan v. State*, 22 N.E.3d 570, 573 (Ind. 2014). We will not reweigh evidence or assess witness credibility. *Id*. We will affirm the conviction unless no reasonable fact-finder could have found the elements of the crime proved beyond a reasonable doubt. *Jackson v. State*, 50 N.E.3d 767, 770 (Ind. 2016).

---

[1] Initially, the State also charged Eason with Level 3 felony dealing in a narcotic drug and Level 4 felony dealing in a narcotic drug, but those charges were dropped prior to trial.

[2] The trial court also revoked Eason's probation in Cause No. 20C01-1606-F6-687 and Cause 20C01-1101-FB-1 and re-imposed his previously suspended sentences, based on his conviction in this case. The trial court ordered Eason's sentences in those cases to be served consecutive with each other and with his sentences in this case.

# Discussion

[9] To convict Eason of Level 2 dealing in a controlled substance, the State had to prove that Eason knowingly or intentionally delivered a controlled substance, pure or adulterated, classified in Schedule I, II, or III. *See* Ind. Code § 35-48-4-2(a)(1)(C). The offense is a Level 2 felony if the controlled substance is at least twenty-eight grams. *See* I.C. § 35-48-4-2(f)(1). To convict for Level 2 dealing in a narcotic drug, the State had to show that Eason knowingly or intentionally delivered a narcotic drug, pure or adulterated, classified in Schedule I or II. *See* I.C. § 35-48-4-1(a)(1)(C). The offense is a Level 2 felony if the amount of the drug involved is at least ten grams. *See* I.C. § 35-48-4-1(e)(1).

[10] Eason's sole issue on appeal is the sufficiency of the evidence that the substances he sold during the controlled buys contained heroin and fentanyl. Eason argues the evidence is insufficient because Kay stated that two runs of GCMS were "weak." Appellant's Br. at 9. Eason relies on *Halferty v. State*, 930 N.E.2d 1149 (Ind. Ct. App. 2010), *trans. denied*, wherein a trooper's testimony about the conversion ratio of ephedrine/pseudoephedrine to methamphetamine was insufficient to sustain a conviction for manufacturing three or more grams of methamphetamine based on the amount of ephedrine/pseudoephedrine recovered at the scene. The trooper testified that "in general" the conversion ratio between ephedrine/pseudoephedrine and methamphetamine is "usually" about 70-80%, and one gram of ephedrine/pseudoephedrine would produce "about" 0.7-0.8 gram[] of methamphetamine. The trooper's use of imprecise terms did not constitute proof beyond a reasonable doubt that 4.61 grams of

ephedrine/pseudoephedrine would produce three or more grams of methamphetamine. Eason argues that Kay's "weak" runs of GCMS are "likewise nebulous" and thus insufficient to prove beyond a reasonable doubt that the substances contain heroin and fentanyl.

[11] *Halferty* is inapplicable to this case. Here, "weak" is a description of the results of a single scientific test rather than a general description of Kay's findings. Both substances had one weak GCMS run; Kay then concentrated and retested the substances, receiving positive results. Thin layer chromatography confirmed the positive results. The fact finder was justified in crediting Kay's testimony about the nature of the substances. Eason's argument is nothing more than a request for us to reweigh the evidence and assess the credibility of the witness on appeal, which we will not do. We therefore conclude that the State presented sufficient evidence to support Eason's convictions.

[12] Affirmed.

May, J., and Brown, J., concur.